## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

Matthews                                    Civil Action No. 18-00246

versus                                      Judge Robert G James

Social Security                             Magistrate Judge Carol B Whitehurst
Administration

## REPORT AND RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, the Court finds that the Commissioner's decision should be affirmed and this matter be dismissed with prejudice.

## Administrative Proceedings

The claimant, Donna Matthews, fully exhausted her administrative remedies before filing this action in federal court. On June 11, 2015, she filed applications for a period of disability and disability insurance benefits ("DIB"), alleging she became disabled on June 7, 2015. *Tr. 15.* Her applications were denied. *Id.* Thereafter, she requested a hearing, which was held on March 6, 2017 before Administrative Law Judge Kim A. Fields. *Tr. 25.* The ALJ decided that the claimant was not disabled within the meaning of the Social Security Act from June 7, 2015 (the alleged

1

disability onset date) through June 6, 2017 (the date of the decision). *Tr. 25*. The claimant requested review of the decision on June 12, 2017, but the Appeals Council found no basis for review on January 25, 2018. *Tr. 1-6*. Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. § 405(g). Claimant then filed this action seeking review of the Commissioner's decision.

## Summary of Pertinent Facts

The claimant was born on February 22, 1958. At the time of the ALJ's decision she was 59 years old. *Tr. 36.* After graduating from high school she performed administrative work throughout her employment history. *Tr. 36-37*. The claimant's severe physical impairments include disabling pain and physical limitations from spinal problems and rheumatoid arthritis. *R. 2*. She contends she has not been able to return to work since June 7, 2015, the onset date of her disability. *Id*.

## Analysis

### A. Standard of Review

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence. *Villa v. Sullivan*, 895

F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.' " *Id.*

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1022. Conflicts in the evidence, *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985), and credibility assessments, *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991), are for the Commissioner to resolve, not the courts. Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and

disability, and (4) the claimant's age, education and work experience. *Id.*

**B. Entitlement to Benefits**

The DIB program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a). If unmarried and between fifty and sixty years old, the widow of a fully insured individual is entitled to widow's insurance benefits if she is disabled and her disability began no more than seven years after the wage earner's death or seven years after he was last entitled to survivor's benefits. 42 U.S.C. § 402(e); 20 C.F.R. § 404.335. Every individual who meets certain income and resource requirements, has filed an application for benefits, and is determined to be disabled is eligible to receive Supplemental Security Income ("SSI") benefits. 42 U.S.C. § 1382(a)(1) & (2).

A person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial

4

gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

## C. Evaluation Process and Burden of Proof

The Commissioner uses a sequential, five-step approach to determine whether a claimant is so disabled. This process requires the ALJ to determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work. 20 C.F.R. § 404.1520(a)(4). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity, 20 C.F.R. § 404.1520(a)(4), by determining the most the claimant can still do despite her physical and mental limitations based on all relevant evidence in the record. 20 C.F.R. § 404.1545(a)(1). The claimant's residual functional capacity is used at the fourth step to determine if she can still do her past relevant work and at the fifth step to determine whether she can adjust to

any other type of work. 20 C.F.R. § 404.1520(e).

The claimant bears the burden of proof on the first four steps; at the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy. *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016). This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding. *Id.* at 1302; *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends. *Greenspan*, 38 F.3d at 236.

## D. **The ALJ's Findings and Conclusions**

In this case, the ALJ determined at step one, that the claimant has not engaged in substantial gainful activity since June 7, 2015. *Tr. 17.* This finding is supported by substantial evidence in the record.

At step two, the ALJ found that the claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine, Status-post cervical anterior cervical disk fusion and rheumatoid arthritis. *Id.* This finding is supported by substantial evidence in the record.

At step three, the ALJ found that the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments for disability. Specifically, the ALJ considered Listing 1.04 for spinal disorders, and 14.09 for inflammatory arthritis, but determined that Plaintiff's ailments did not satisfy the criteria for these Listings. *Tr. 19-20*. The claimant challenges this finding.

The ALJ then found that the claimant has the residual functional capacity to perform sedentary work except that she would need to change positions while seated alternating sitting 30 minutes and then standing up for five minutes. *Tr. 20.* The claimant challenges this finding.

At step four, the ALJ found that the claimant is capable of performing past relevant work as an administrative assistant. *Tr. 25.* The claimant challenged this finding.

Based on the ALJ's finding that the claimant was not disabled at step four of the sequential evaluation process, she was not required to proceed to step five—the Commissioner's burden to demonstrate that other work exists.

## E. __The Allegations of Error__

The claimant contends that the ALJ erred by (1) failing to properly evaluate and consider Listing 1.04A and Listing 14.09D at Step 3; and, (2) failing to consider

the opinions of the vocational expert and the medical evidence and the claimant's testimony in finding that the claimant can return to work.

**(1) <u>Whether the ALJ Failed to Properly Evaluate Listing 1.04A and 14.09D</u>**

The claimant avers that the ALJ did not properly evaluate and consider Listing 1.04A or 14.09D at Step Three, and maintains the ALJ erred by not finding that her impairments meet or equal Listing 1.04A and 14.09D.

If a claimant is not working and is found to have a severe impairment at step two that meets the duration requirement, the ALJ must determine at step three whether the claimant's impairment meets or medically equals one of the impairments listed in the regulations.[1] *Compton v. Astrue*, 2009 WL 4884153, at *6 (N.D. Tex. 2009) (citing 20 C.F.R. § 404.1520). If the claimant's impairment meets or medically equals a listed impairment, the disability inquiry ends, and the claimant is entitled to benefits. 20 C.F.R. § 404.1520(d). The claimant has the burden of proving that her impairment or a combination of impairments meets or medically equals one of the listings. *Id.; Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990) (*per curiam*).

To meet a listed impairment, the claimant's medical findings, i.e., symptoms, signs, and laboratory findings, must match all those described in the listing for that

---

[1] These impairments are listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.

impairment. 20 C.F.R. §§ 404.1525(d), 404.1528; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). To equal a listing, the claimant's unlisted impairment must be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a). The claimant shows that her unlisted impairment or a combination of impairments is "equivalent" to a listed impairment by presenting medical findings equal in severity to all the criteria for the most analogous listed impairment. *Sullivan*, 493 U.S. at 529–31; *see also* 20 C.F.R. § 404.1526(b)(2). The ALJ must consider all of the evidence that is relevant to the claimant's impairments and their effects, but must not consider vocational factors such as age, education, and work experience. 20 C.F.R. § 416.926(c). "[T]he responsibility for deciding medical equivalence rests with the [ALJ]." *Id*. § 416.926(e).

The claimant asserts that the ALJ's analysis was "only cursorily" in determining that her impairment did not meet the requirements of Listing 1.04A and 14.09D. *R. 11*. In *Audler v. Astrue*, 501 F.3d 446 (5th Cir. 2007), the Fifth Circuit held that the ALJ committed legal error when she "summarily concluded" that the claimant's impairments were not severe enough to meet or medically equal one of the listed impairments, but "did not identify the listed impairment for which [the claimant's] symptoms fail[ed] to qualify," and did not "provide any explanation as to how she reached the conclusion[.]" *Audler*, 501 F.3d at 448. Noting that an ALJ

was not "always required to do an exhaustive point-by-point discussion," the *Audler* court stated that it simply could not "tell whether her decision [was] based on substantial evidence" because she "offered nothing to support her conclusion at this step." *Id*.

Courts in the Fifth Circuit have found that even when an ALJ specifically identifies a listing at step three, he/she errs by failing to discuss the medical evidence and provide the reasons for the step three determination because the failure prevents meaningful judicial review. *Woods v. Colvin*, 2015 WL 5311142, at *11 (N.D. Tex. 2015), adopted by 2015 WL 5319926 (N.D. Tex. 2015) (citing cases); see, e.g., *Matthews v. Astrue*, 2013 WL 5442265, at *4–5 (M.D. La. 2013) (finding error where the ALJ specifically stated that she considered Listing 1.04A, but did not explain the basis for concluding that the claimant's sensory loss was due to an unrelated problem, and failed to discuss or mention any evidence relating to the remaining 1.04A criteria). "Although it is not always necessary that an ALJ provide an exhaustive discussion of the evidence, bare conclusions, without any explanation for the results reached, may make meaningful judicial review of the Commissioner's final decision impossible." *Inge ex rel. D.J.I. v. Astrue*, 2010 WL 2473835, at *9 (N.D.Tex.,2010) (citing *Audler*, 501 F.3d at 448).

In evaluating the claimant's impairments and whether they qualified as listed

impairments, the ALJ stated the reason for her conclusion expressly "considered the opinions of the examiners with Disability Determinations Services and medical evidence from her treating physicians." *Tr. 19.* The ALJ's considerations of the evidence that is relevant to the claimant's impairments and their effects are as follows.

### Listing 1.04A Spinal Impairments

As to the claimant's neck and low back pain, the ALJ noted that the claimant was examined by her treating neurosurgeon, Dr. Appley, in October, 2014 for neck pain with bilateral arm numbness, pain and tingling. Dr. Appley found posterior disc bulge at C5-6 and C6-7. Dr. Appley completed a medical source statement on October 22, 2014, indicating that the claimant could not return to her job but retained the ability to perform light-duty work. *Tr. 257.* On January 7, 2015, Dr. Appley performed cervical disc arthroplasty and intervertebral discs replacement at the C5-6 and C6-7 levels. *Tr. 268-269; 354-55.* Dr. Appley noted that the claimant's condition was "very much improved" after the surgery and she returned to light duty work in March, 2015. Her neck pain, however, returned—although not as severe as prior to surgery. Despite undergoing physical therapy, the claimant stopped working on June 5, 2015. *Tr. 346, 367.*

In a September 30, 2015 examination Dr. Appley noted that the claimant

11

suffered from left arm pain and occasional right arm pain, but her pain was not as severe as pre-surgery. *Tr. 367.* The claimant's physical examination in September 2015 was normal, and her bilateral straight let raising test was negative. *Tr. 370.* She reported difficulty walking at times, but was informed that her symptoms were due to plantar fasciitis. EMG of the lower extremities revealed no abnormalities. *Tr. 374-76.*

CT scans dated November 2, 2015 revealed minimal degenerative changes of the cervical spine with mild cervical spondylosis and intervertebral disc spacers a C5-6 and C6-7 and mild degenerative changes of the lower lumbar spine. *Tr. 372-74.* The claimant underwent a nerve root injection procedure at C-3 right in October 2016, which provided relief and reduced her pain to a 3/10 in severity and improved her overall functioning by 20%. *Tr. 363-365.* A CT scan of her cervical spine in October 2016 remained unchanged and the imaging showed mild cervical abnormalities. It was noted that the claimant reported she had no pain or acute distress. *Tr. 659.*

In a September 2016 Social Security examination, the claimant complained of low back pain that continued after her surgery in January 2015. *Tr. 568-596.* She reported treatment by a chiropractor for nine years which provided her relief, but she was no longer being treated. *Id.* Her examination revealed normal range of motion

12

of the neck, cervical spine, bilateral shoulders, bilateral shoulder strength, bilateral upper reflexes and gait. Her lumbar examination revealed normal motor strength bilaterally and reflexes, except for Achilles reflexes. Her diagnosis included pain in both upper extremities. MRIs revealed degenerative disc disease with narrowing of facet hypertrophy at L4-5, but no significant stenosis. No surgery was recommended for the lumbar spine. Imaging showed mild abnormalities.

The ALJ noted that the claimant's records from treating physicians did not indicate she had a poor prognosis or would not be able to work. In particular she cited Dr. Appley's pre-operative opinion that the claimant could do light-duty work and that she showed improvement after the surgery. Ultimately, the ALJ found that the claimant's statements that her condition was better than it was prior to the cervical arthroplasty coupled with her normal examinations and follow-up MRIs and imaging results suggested that she was not as disabled as she alleged. *R. 23.* The ALJ stated that although the claimant alleged to be in extreme constant pain, she had not received the type of medical treatment expected for a completely disabled person. Instead, her treatment had been conservative and routine. *Tr. 24.* The Court finds the ALJ met her burden to consider all of the evidence relevant to the claimant's spinal impairments and their effects, and that it meets the Fifth Circuit's requirement to provide meaningful judicial review.

Listing 1.04 provides for presumptive disability for spinal disorders, stating

that a claimant will be found disabled if she has:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthrosis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> B. Spinal arachnoidities, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than every 2 hours; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in the inability to ambulate effectively....

20 C.F.R., Part 404, Subpt. P, App. 1, § 1.04. "These physical findings must be

determined on the basis of objective observation during the examination and not

simply a report of the individual's allegation...." *Id*. at § 1.00D.

The ALJ expressly considered Listing 1.04 and found, "there is no evidence

that the claimant cannot effectively ambulate." *Tr. 20.* The claimant argues that the

ALJ did not adequately consider 1.04A. The record indicated that the ALJ

14

considered all three paragraphs of 1.04 A, B and C. *Tr. 19-20.* As to listing 1.04A specifically, "1.04A specifies a level of severity that is only met when all of the medical criteria listed in paragraph A are simultaneously present: (1) Neuro-anatomic distribution of pain, (2) limitation of motion of the spine, (3) motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and, (4) if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). Listing 1.04A uses the conjunction 'and' when enumerating the medical criteria in order to establish that the entire set of criteria must be present at the same time on examination." Social Security Acquiescence Ruling (AR) 15-1(4), *Radford v. Colvin: Standard For Meeting The Listing For Disorders Of The Spine With Evidence Of Nerve Root Compression*, 2015 WL 5697481, at *4. The claimant must also demonstrate that she met the listing criteria for a period that lasted or is expected to last at least twelve months. *Woods v. Colvin*,   2015 WL 5311142, at *12 (N.D. Tex. 2015), adopted by 2015 WL 5319926 (   2015); *see also* 20 C.F.R. Part 404, Subpt. P, App. 1, § 1.00(B)(2). With respect to spinal disorders Section 1.04 "requires a 'herniated nucleus pulposus ... [w]ith [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss and, if there is

involvement of the lower back, positive straight-leg raising test.' To demonstrate the required loss of function for a musculoskeletal impairment, the claimant must demonstrate either an 'inability to ambulate effectively on a sustained basis ..., or the inability to perform fine and gross movements effectively on a sustained basis.'" *Audler v. Astrue*, 501 F.3d 446, 449 (5th Cir. 2007) 20 C.F.R. Part 404, Subpt. P, App. 1, § 1.00(B)(2).

The claimant's medical evidence fails to demonstrate that *all* the criteria included in Listing 1.04A were simultaneously present for twelve continuous months. In particular, the claimant's motor function tests were routinely normal and a bilateral straight leg raising test performed by Dr. Appley was negative. Finally, as stated by the ALJ, "there is no evidence that the claimant cannot effectively ambulate."

## Listing 14.09 Inflammatory Arthritis

As to the claimant's allegations of rheumatoid arthritis, the ALJ noted that the claimant was treated for rheumatoid arthritis for six months prior to the alleged onset date, June 7, 2015. The claimant began treatment for her arthritis problems in November 4, 2014, by rheumatologist, Dr. Lipstate. She tested positive for the rheumatoid arthritis factor and exhibited hand, finger, and wrist swelling on x-ray.

*Tr. 310-11.* On examination in June, 2016, her range of motion was well preserved and there were no focal deficits. Her bilateral upper and lower extremity range of motion were within normal range and she had no subjective sensory deficits. Her strength was good and her musculoskeletal exam revealed no abnormalities of the upper or lower extremity joins. *Tr. 383-84.* Her most recent examination by Dr. Lipstate on December 14, 2016, showed symptoms suggestive of tendinitis in her right shoulder and bursitis in her right hip, although she complained of increased aches and stiffness, especially in her right shoulder, right hip, buttocks and neck. *Tr. 607-08.* Her diagnosis was long-term drug therapy and rheumatoid arthritis with rheumatoid factor in multiple sites without organ or systems involvement. Dr. Lipstate started her on prednisone for her shoulder pain and continued her gabapentin for the neuropathy symptoms in her feet. *Id.*

In order to meet Listing 14.09D for inflammatory arthritis, a claimant must show:

D. Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:

E.

   1.  Limitation of activities of daily living.

   2.  Limitation in maintaining social functioning.

   3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. pt. 404, subpt. P, app. 1, § 14.09D. "As used in these listings, 'repeated' means that the manifestations occur on an average of three times a year, or once every 4 months, each lasting 2 weeks or more; or the manifestations do not last for 2 weeks but occur substantially more frequently than three times in a year or once every 4 months; or they occur less frequently than an average of three times a year or once every 4 months but last substantially longer than 2 weeks." *Id.*, § 14.00(I)(3). In addition, the manifestations must occur within the period covered by the claim. *Id*.

The ALJ expressly considered the claimant's medical evidence related to her rheumatoid arthritis under the requirements to find "inflammatory arthritis" under Listing 14.09D and found, "there is no evidence of the above." *Tr. 20.* Based on the claimant's medical records and the evidence in the record, the Court finds that the ALJ did not err in failing to include 1409D as a Listing.

**(2) Did the ALJ Err in Finding that the Claimant Failed to Satisfy Her Step Four Burden that She Cannot Return to her Past Work**

The claimant asserts that it was error for the ALJ to conclude that she could perform her former work which was contrary to the expert vocational testimony. The ALJ found that the claimant's past relevant work was as an Administrative Assistant, sedentary, SVP 7. The ALJ did pose a hypothetical question to the

Vocational Expert ("VE"): "If I were to assume that the claimant is 59 years of age, has 12 years of education, has exertional ability, [*sec*] perform sedentary work with the following limitations: she must change her position while sitting on a continuous basis for at least 30 minutes at a time before standing up to five minutes at a time, can she return to her past work?" *Tr. 47*. The VE then asked, "Is she able to remain on task while changing positions continuously?", to which the ALJ replied, "It is presumed" and the VE stated, "If she's able to remain on task, yes. If she's not able to remain on task, no." *Id.*

The claimant's argument fails because the ALJ was not required to rely on a vocational expert at step four, the step where the disability determination was made in the instant case, namely that the claimant could return to her past relevant work as an administrative assistant. The use of a vocational expert is appropriate only if the analysis moves to step five and a determination must be made of whether the claimant's skills can be used in other work and of what other specific jobs are possible for the claimant and available to her. 20 CFR § 404.1566(e). It is well-settled that a vocational expert is not needed if the ALJ concludes that a claimant could return to her past relevant work. *See Gray v. Secretary of Health, Ed. and Welfare*, 421 F.2d 638, 639 (5th Cir. 1970); *Williams v. Califano*, 590 F.2d 1332, 1334 (5th Cir. 1979).

Here, the record indicates that the ALJ properly conducted an independent step four analysis. The ALJ stated that she determined that the claimant could return to perform her past relevant work as it is performed in the national economy "based on the record" *Tr. 25. See Social Security Ruling (SSR) 82-61*, 1982 WL 31387, at *1-2 (a claimant is not disabled if he or she retains the RFC to perform (1) the "actual functional demands and job duties" of a previous job; or (2) the "functional demands and job duties of the occupation as generally required by employers throughout the national economy"). The Fifth Circuit has observed that "an ability to perform work on a regular and continuing basis is inherent in the definition of RFC." *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003); *SSR 96-8p*, 1996 WL 347184, at *1-2. The ALJ defined residual functional capacity and cited to the appropriate regulation as well as *SSR 96-8p. Tr. 16.*

Based on the records before the Court and the ALJ, there is substantial evidence to support the ALJ's finding that Plaintiff retains the ability to perform her past relevant work. In so holding, the Court specifically notes the ALJ's opinion that "the claimant is not as disabled as she alleged" and that "[although] the claimant alleges to be in extreme constant pain ... she just has not received the type of medical treatment expected for a completely disabled person ... her treatment had been conservative and routine." *Tr. 23-24.*

20

## <u>Conclusion and Recommendation</u>

For the foregoing reasons, this Court recommends that the Commissioner's decision be AFFIRMED and this matter be dismissed with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** this 5th day of April, 2019.

**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**

21